Page 24-1346, et al. Secretary of Montana, Inc., a subsidiary of Women Technologies, Inc., Petitioner, v. National Women Relations Board. Mr. Scully, for the Petitioner. Mr. Cantor, for the Respondent. Mr. Demery, for the Intervener. Mr. Scully. Thank you, Your Honor. May it please the Court. On August 10, 2021, business manager George Bland, whose union represents a small group of employees at the incumbent local exchange carrier in and around Kalispell, Montana, sent an information request to John Bemis, the local manager. The information request sought information about non-bargaining-unit employees. It is undisputed that Mr. Bland did not say anything regarding why the non-unit information was relevant to his role as the representative. In fact, he testified that he had no reason to even suspect that non-unit employees were infringing on the jurisdiction of the employees he represented. It is undisputed that Mr. Bland said nothing about any contractual claim, any grievance, or any related issue. Mr. Bland said he just wanted to investigate. What you've seen in the briefing of this case is the government and the union's attempt to backfill and augment the simple interaction between Mr. Bland and Mr. Bemis. That effort began at the unfair labor practice trial in this case, when counsel for the general counsel for the NLRB produced for the first time purported reasons for Mr. Bland's request. At the unfair labor practice hearing, it was first disclosed that the information request at issue in this case was a form request based on internal communications from sister local IBEW unions, not even authored by Mr. Bland. Then the NLRB counsel introduced some old settled grievances unrelated to the interaction between Mr. Bland and Mr. Bemis. He suggested that those might provide a basis for Mr. Bland's request for non-unit information. On cross-examination, Mr. Bland denied that any of these newly introduced elements formed the basis of his request. It is undisputed he did not reference these things at the time. He didn't claim even that he had a suspicion that national techs were doing bargaining unit work. He denied, in fact, that he had such suspicion. When asked by the judge, he specifically denied hearing or seeing anything that would give rise to a reasonable suspicion that national technicians were performing bargaining unit work. Can I ask you a question? Yes. And this just might be that I'm not an expert on NLRB matters. But is it correct that we can decide this case based on at any point was there reasonable belief or that it was relevant? Because it seems to me that there are sort of three different moments in time that seem to be at issue or that are discussed in the briefs. And it seems that if, for example, we could just resolve this case based on a finding, could we not, that at the hearing there was sufficient evidence of relevance, that there was a reasonable belief that there was relevance, and that we don't have to consider sort of the first point in time, which was the contact, or the second point in time, which was the phone call. I just want to understand, like, is it that we have a menu of options that if we find that there's relevance at any of those points in time, then that would be sufficient? Judge Pan, I think that the answer to that question certainly is no under the precedence of this court as well as the NLRB. Specifically, this court's decision in New York and Presbyterian Hospital, which looked at the request, the reasons proffered at the time of the request. And if you consider the facts in this case, there is no reason that Mr. Bemis would have known about these interactions. But do we have to address that if we think that there's enough evidence at the time of the hearing? And I understand that there's a due process argument, but that seems to be forfeited. Well, Your Honor, I think we do have to address it because that's the time when the violation allegedly occurred. So Mr. Bemis at that point is in a position where he will violate or not violate Section 805 of the National Relations Act based on his response. Correct me if I'm wrong because, again, I'm not an expert in NLRB matters. I thought that at the hearing, they were addressing this question as to whether or not at the time that the request was made it was relevant. But at the hearing, they looked at additional evidence and a bunch of other stuff. And I understand you to be arguing it wouldn't be fair to bring in information that Bemis didn't even know about. But I think that there's precedent on point that says you're allowed to do that in an NLRB hearing and you're not asking us to overturn that precedent, which is Conalton. Right. I'm not asking you to overturn any precedent, Your Honor. I think I'm saying that the precedent does not say what the government and the union claim it says. What those cases concern is they concern whether or not the union must actually prove relevance and that that proof could be adduced at the unfair labor practice hearing. This case involves a rare situation that has never been seen before the NLRB where the union agent did not articulate any kind of basis of relevance. When pushed, he repeatedly said, I just want to investigate whether or not this is occurring. Correct. I think I would probably agree with that, that he didn't articulate it. But then it seems that Bemis made statements that indicated that he knew that this was relevant based on the fact that nonunion workers were in the jurisdiction working. And so I think that it is unusual in that I think they are relying on Bemis' statement to say that it was relevant as opposed to just Glantz' statement. Well, I think, Your Honor, what happened in this case was that there was a conversation that occurred and there's a difference of opinion about what was said. It was clearly it occurred after the request was made. So it couldn't have been a basis for Mr. Glantz' request to begin with. And he didn't articulate it as a basis at any time thereafter. But that's one interaction because it's the request and then the rejection. The request and the rejection. And the rejection hadn't happened yet. Correct. But the time the conversation occurred, Mr. And I would say that there's nothing remarkable about national technicians being in the state of Montana, which is all that Mr. Bemis affirmed in his conversation. That is throughout the system and that has nothing to do. And I understand that that's kind of disputed. And that's why I think it makes it trickier to sort of look at the facts at that point in time. And that's why I was asking, like, can we just affirm based on what happened at the hearing? I don't think you can. And I don't think it's consistent with this court's precedent to do that. How is it not? Because in your Presbyterian hospital, this court said specifically that we consider the reasons proffered by the union at the time of the request relying on General Electric. And in General Electric, the Seventh Circuit clearly said that you can't rely on the circumstances presented at trial. And I think that that is. What was that case? The General Electric case was the case upon which New York and Presbyterian Hospital relied. New York and Presbyterian Hospital is 649-537-23. So Presbyterian Hospital didn't, well, did it involve the actual scenario here, like in the wiggly case? I'm going to try to minimize the number of times I have to say that. But where they really were trying to introduce evidence for the very first time. Because it didn't seem to me that in Presbyterian Hospital we actually confronted and rejected that issue. And it does seem that the board's cases are pretty clear that this is permitted in terms of introducing the evidence for the first time at a hearing. If I may address that, Judge Garcia, the piggly wiggly, sorry to say that again, and Kennelton clearly dealt with a situation where there were some facts on the ground that related to the allegation of an alter ego status. That there was something that the employer did. They had a, and the double brushing cases that the government relies on, the union relies on, there are always circumstances where the employer has done something. And that that has given rise to an allegation or suspicion sufficient to put the employer on notice that this could connect to the bargaining obligation. Which of course makes sense. This case there was absolutely nothing that occurred. There was no additional, that's not to concede the violation, but it's to say that there has to be something. Or else we've lost the distinction between presumptively relevant information and non-unit information. Because we're saying that Mr. Bemis has to regard a request like that as presumptively relevant. And can't say what's the basis for that request. Even if the record shows that he was employed at the time these previous grievances were filed. In other words, you are not arguing that the owner of the company as an individual had to be aware of these previous grievances. Well, Judge Rogers, I think that two things about the grievances. Number one, they were settled. And there's not supported by substantial evidence that there was any prior diversion of work. That is absolutely not supported by substantial evidence. But they were from a prior entity. So there was no recency as well. Those were three years old at least. There was nothing that would have put Mr. Bemis. And again, I had the good fortune of being trial counsel and getting to ask Mr. Bland, you know, was there anything? Did you see anything? Did any of your memberships see it? The judge asked him. There was nothing that occurred. And that definitively distinguishes this case from other cases in which there are some facts upon which the bargaining agent relies to say, hey, we want to know more about that situation so that we can bargain. Your view is Mr. Bland's testimony could only be properly interpreted as a phishing expedition? That is what I would say. And that it destroys the distinction between, again, presumptively relevant where bargaining employees have admittedly consented to the union getting information about them, about their whereabouts, about their job duties. Nonunion employees have not exercised their Section 7 rights and impliedly authorized the union to ask for that information. And I think that that's what's lost in this conversation about Hamilton and other cases is that there is this group of employees that haven't chosen the union as their representative and their rights are being infringed upon by treating a request like this as presumptively relevant, which this court has instructed us not to do. How are their rights being impinged upon when the statute authorizes requests for information and whether the request is valid, legitimate? It's a completely different question. There's no suggestion that Mr. Remus was asking for something he was not authorized to ask for, but simply that, as I understand your argument, he had no reason to be concerned. And yet, as you point out, these nonunion employees have been around for a long time. We've got these previous grievances that were settled. I mean, I'm just trying to understand why Brian's inquiry has to be viewed as somehow, you know, suspect, if I can best word. I can address that, Your Honor. I think that the point is, is that the reason there is presumptive relevance is because a majority of employees have certified the union as its bargaining representative and thus empowered it to ask for information relevant to its duty to represent those employees. And there is no connection that the union agent has through that certification to the nonunion employees. And in that sense, there has to be a demonstration. There has to be – and all we're saying is there has to be an articulation of relevance. And there has to be – or there has to be evident facts and circumstances. And in this case, we have neither of those things. We have no facts on the ground. Can we just focus on the call and proceed as if that was basically the only fact? So this is certainly not a slam dunk for the board, but I'll do my best to say what I think is going on and give you a chance to respond. So I think it basically comes down to whether the call would give someone – is a basis to think there might be work diversion occurring. And from the company's perspective, when Bemis says there are national technicians working in your general geographic area, that's not suspicious at all because you know apparently that they've been there for a long time and they do different kinds of work. But Bemis didn't say any of that to Bland. So from Bland's perspective, the situation is I represent a bargaining unit of this general type of technician. I just found out. It's news to me that now there's these other technicians in our area. I ought to look into it. And, again, not a slam dunk, but why is that not a reasonable view of the evidence? Your Honor, because there are all manner of people in this – employed by this company working all over the state of Montana, both in the incumbent local exchange carrier, their managers, their supervisors. There are people of all stripes who are working there. The fact that they're merely working in the geographic area gives no rise to no suspicion with respect to any infringement on the bargaining unit work. And I think that by identifying that – and I would also challenge the point that Mr. Bland was unaware on cross-examination. And he acknowledged not only another IBEW local 206, which is a separate jurisdiction as well. He indicated the previous employer, CenturyLink, had national technicians, and he acknowledged that on his cross-examination. So I don't think it's accurate to say that he didn't acknowledge that. But even if we accept that, there are these other employees, managers, supervisors outside the bargaining unit who are performing tasks in the geographic area, and without something to give rise to any kind of suspicion that that individual can articulate, it is simply improper under this court's precedent to impose a duty to provide information. Thank you. Do you have any other questions, Justice Roberts? Thank you. Thank you very much. Thank you. May it please the Court, Jared Cantor on behalf of the National Labor Relations Board. Your Honors, I want to make two points that I think will help. First, there seems to have been agreement that the controlling standard here is a liberal relevance type standard, which requires a mere probability of relevance. Second, essentially in plain English, the question here is for the Board's first analysis, did the union, and this is language coming from the New York Presbyterian, did the union explain why it was asking for this information? And when you look at how the Court talked about this in U.S. testing, you're looking at did the employer have notice of why this was being asked for? Was it adequately informed? And respectfully, under the deferential substantial evidence standard, I would submit that the Board's primary analysis might be the most straightforward to enforce the Borders on. What do you mean by primary analysis? So that was the Board's analysis that the union established relevance upon making its request. That analysis talks about or relies on the request itself. And then the Board talks about Bemis' admission. That conversation is sort of independently establishing the relevance of that request. And as Your Honor, Judge Pan, I believe, talked about, the request is made, and this phone call happens within hours, same day for certain. Bemis is not the one who refuses. He essentially just passes this along. It's not until September 1st, I believe, that you get, I want to make sure I'm accurate on that, September 1st, that Noble replies. She gives some information. She withholds others. That's where you essentially get the refusal to provide that information. And I think what's noticeable about both Bemis and Noble is Bemis clearly understands that they're, he has a concern. What's going on here? He's not confused. He's asking, he says in his testimony, there was no grievance pending, so this sort of caught my attention. What's going on here? Noble, in her answer, September 1st, for the information she doesn't provide, her response is, these national technicians are not in the unit and they're not performing bargaining unit work. So the company essentially is on notice that why is the union asking for this information? This would not be trying to think of the case. Can I ask, I just want to understand, as a threshold matter, what do you think the rule is? Imagine a case where this union had no indication whatsoever that work diversion was correct. In its jurisdiction? Or anywhere? In its jurisdiction. That would affect it. And they asked these questions. The company would not be required to respond, right? There needs to be some, maybe very minimal, but a basis to think that it's relevant to their union. Well, I think, Your Honor, potentially, but the facts here obviously show these telecommunication council reports. Well, you said potentially, right? Potentially. I just want to, right, I think it has to be yes. You cannot, we heard that there was work diversion in Texas. Now every single one of our locals is going to ask for information to find out if it's happening in their jurisdiction. Well, it was three reports, Your Honor. No, I'm not talking about the case. I'm saying you would agree with the general principle you cannot embark on a fishing expedition just because if you did uncover something, it would be relevant to enforcing your CBA. There needs to be some, like, minimal basis to be asking the question. Yes, Your Honor. I mean, essentially, it's thinking about hypotheticals and the going hand-in-hand. A union could submit. Yeah, sorry. I don't want to go down that path. So then let's go directly to the call. Okay. The company's argument is there's just nothing suspicious about saying technicians are working in this area of Montana. There's all kinds of technicians and other types of employees that have always been working there. What's the cause for suspicion? And that does strike me as the key question in the case, and could you just explain why? Sure, Your Honor. As Bland testifies that he had been, in one form or another, a union official for 13 years, he had never heard this term, national technicians, until the telecommunications council put it on his radar. Then during this phone call, he asked Bemis, are there any national technicians working in my jurisdiction? And the credited and the company doesn't really challenge the board's credibility resolution here, or at least acknowledge the standard. Bemis then says, a couple. So a couple of techs have been in your jurisdiction. He says, a few times, but not many. And that's essentially what he says is the extent of his knowledge. But I think the board was finding that he admitted there. It wasn't that in the jurisdiction they were actually doing union work, right? He meant, or the board thinks he meant, at least they're working in your geographic area. Yes, because I think if his admission was taken as that kind of admission, the analysis would be quite different, and you could have gone straight to, you know, pass, go get your $200, there's a violation of the CBA. And I think that's another important thing to remember in this area, is that this is supposed to be an investigatory process. This is very, very early on. You are, I mean, when we talk about, ACME talking about, this is a discovery-type standard. You're not necessarily going to get evidence with your first request that's going to be admitted at a trial. You're getting evidence that might lead you to further evidence. So what's very odd to me is that we're trying to determine if the union has demonstrated a reasonable belief supported by objective evidence that the information is relevant, but we're relying on Bemis' response to the union request. And that's strange to me, and that's why it seems to me if we have the option of doing so, the most, I guess, efficient and strong way to resolve this case would be to go straight to the hearing and rely on all the evidence that was submitted there, because there we also have evidence about what caused Bland to make this request, which is that, you know, there was information that this type of unauthorized work was happening in other jurisdictions with these national texts. Maybe it's happening in our jurisdiction, which gives him a reason to believe maybe there's a problem here. Why wouldn't we just rely on the hearing evidence if we're allowed to do that? I think that is another… Because there's more evidence at that point. Yes, Your Honor, there certainly is more evidence. And, you know, with regards to that standard about union need only demonstrate a reasonable belief to be supported by objective evidence, that's where you have to sort of understand how these things play out. That is the general counsel's burden in front of the board as part of litigating the case. The union doesn't litigate the case. They would have… I understand that. So what it's… So that quote, if you look at where that comes from, it comes from the board's Disneyland case. Really what we're talking about there is that's what the general counsel had to show that the union had. But in making that showing, they're relying not just on what the union said or did. They're relying on the response to the union. If they're going to rely on Bemis' statement, Bemis doesn't work for the union. That's what's strange to me, that you can rely on what Bemis said to establish what the union believed. Well, it's not… It just establishes the question of whether… It goes to the relevance, and it goes to, I think, that other thing I talked about was the company on notice of what they were asking for. I mean, if you think about a case where the request for information is this. Please provide, CenturyTel, please provide us the names of all employees in the state of Montana, all of your employees in the state of Montana, their position and their salary information that aren't in the union. The employer is going to say, what does this go to? You can imagine another hypothetical. The union writes a treaties explaining in detail why it wants certain information, but it wants to know the address of the CEO's vacation homes. They've clearly communicated why they want that information, but the relevance probably is not going to be there. You sort of need that handoff. You need an explanation that puts the employer on notice, going back to U.S. testing. Is the employer on notice? Was it adequately informed about why the union needs this information? And the request is extremely detailed in the cover email. It's just interesting to me why it is that there's sort of these choices of looking at what was relevant at different points in time when it must be the case that in every case you'll have the most evidence at the hearing, because you have this rule that additional new evidence can be presented at the hearing. It was done in this case. Why should we even look at the earlier points if we're allowed to look at the hearing evidence, which is the most evidence? It's always going to be the most evidence, is it not? It might not be, Your Honor, because a union, again, looking at the facts of this case, in their opening letter requesting the information, they could have said, we're submitting this because we've heard through the Telecommunications Council that in three other locals, But that's in the hearing, too. You're not going to not admit it. Well, that wouldn't be new. It would have been part of – I'm not saying rely only on new evidence. I'm saying just rely on all the evidence at the hearing. You can do that in every case. I don't know why you would ever go earlier because you have less evidence earlier. Well, I guess, Your Honor, it would only be the board's analysis would only be at the earlier time. Even though that evidence would have come in at the hearing, the board would be looking at, did the union explain relevance upon making its request? That's always sort of the default. Well, they don't have to explain it, apparently, because you can have new evidence that wasn't even explained. Because in this case, they relied on evidence that Bland did not communicate to Bemis. There's new evidence. Well, that evidence comes in to show whether the union's relevance was based on a reasonable belief supported by objective evidence. Isn't that the whole question we're dealing with here? Yes, yes. But sometimes that evidence – I'm not understanding you because I'm asking you if you're trying to answer this question that we're trying to answer in this case, why would you ever not just go to the hearing evidence where you have all the evidence plus new evidence? You have the most evidence at that stage in the process. So I don't know why there are all these arguments about these prior points in time. Your Honor, I think it's only in this case because other evidence came out at the hearing. But in a case where no other evidence – again, those cases might not have been litigated. But in other cases where all these – Well, it's also because the dissenting board member and common sense would seem to suggest that it's a pretty odd rule to let you ambush the company with new evidence at the hearing, right? So I – well, can I just ask a clarifying – This court has said we must address the dissenting position. The board must address the dissenting position. It's not frivolous or something like that. So the board did hear. So I thought that's why you were focusing on pre-hearing evidence. No, Your Honor. And to Judge Garcia's point, what the Hertz standard is, is just when you're explaining the relevance of the information, you need to give some facts. That's what the Third Circuit said in Hertz, and it talks about this in its Croizer opinion. But even under Hertz, there's the apparent relevance. I don't want to call it an exception, but Hertz is not just a set standard. Third Circuit aside, this was my clarifying question. I just want to understand your position. Assume under board precedent that he had just asked these questions. He never gave any basis whatsoever. It all comes out at the hearing. Yes. Do you think that is permissible under the board's cases? Yes, that is permissible under the board's cases, yes. That's what I understood. Yes. Could you briefly try to defend that rule? I know the first thing you would say is that it's forfeited, but if you put that aside, why in the world would we have a rule that encourages or even allows unions to hold back evidence and bring it up for the first time in a hearing? Well, Your Honor, I'll – so to my knowledge, the board has – there's no – if the concern is due process, I'm not aware of a – because that's the argument. It's a statutory concern. Why are we – it ought to be an exchange of information. We could have not had this entire case if Bland had just shared the information he had, and maybe the company would have agreed without going through a hearing and being labeled an NLRA violator. It just seems like a very odd way to run the railroad. Well, Your Honor, there might be a best practice, but reasons that come to mind why a union might, on the one hand, it could be that they might be getting information from an inside source. A supervisor, a manager is leaking information to them, and they don't want to reveal that. Also because, you know, the standards here are there's presumptively relevant information, and then there's just everything else. It's not a dichotomy of presumptively relevant and not presumptively relevant that there's this big hurdle. So the standard is low, which is why there's never been a requirement that in explaining relevance, you support it with facts. Again, the Third Circuit took a different view in its Hertz decision. Another reason could be, again, I'm speculating, but to answer Your Honor's question, your information request, you put some facts in there. The employer is now going to want to start arguing with your facts, and the whole point of this is to be a mostly seamless low bar to get information as part of your investigation because as was acknowledged, the union has a duty here to administer and police its bargaining agreements, and that duty is not theoretical. That duty is to its members, and one of its most important duties is to make sure that the employer is not siphoning off work in full scale or just around the edges. Any more questions? I was just trying to listen to what he was saying. Do you have any more questions? I don't. If there are no further questions, the Board rests on its brief. Thank you, Your Honors. Mr. Demery. Good morning, Your Honors. May it please the Court, I'm Jacob Demery. I represent the union. I agree with everything counsel for the Board said, but I'd like to emphasize that this is factually and legally a very simple case. The key question is whether the union first articulated a basis for its request, and second, whether it had any evidence to back that up. Here on page 344 of the record, the union articulated the basis for its request. It said that it was requesting information regarding national texts in the union's jurisdiction. That's in the initial e-mail to CenturyTel conveying the request. Now, there was sufficient evidence at the time backing that request up. That's the telecommunications e-mails that, as we were discussing, were introduced at the hearing, but the union had those e-mails before it made the request. Those e-mails showed that in other jurisdictions, national texts may have been performing unit work. In any event, addressing some of Judge Payne's questions on why we would consider evidence introduced before the hearing or evidence that wasn't just introduced at the hearing, during that conversation between the union and CenturyTel on August 10th, CenturyTel, as it admits on its brief in page 19, it conceded that national texts were in the area. That's all that's required to establish relevance, and that's all that's required to require CenturyTel to provide the information in this case. You mean geographically in the area versus in – I understand there's some confusion about jurisdiction, like geographical or doing the work. But you think just that would be sufficient, just saying they're in the area geographically? Yes, I do, Your Honor. And just to clarify for jurisdiction, from the union standpoint, jurisdiction can either be geographical work and mean scope of work in terms of union class differences. And so the only meaning that actually makes sense here is geographical, though, of course, it's a distinction without a difference here, because even if we assume area, the broad definition that CenturyTel describes, area means work that could be potentially occurring within the collective bargaining agreement. It could be potentially unit work. So if they're geographically there, does that implicate your collective bargaining agreement? I thought it had to be actually doing the work. So let me answer that question. Yes, so if they're geographic, they would have to be performing unit work to violate the collective bargaining agreement. But here the standard is not whether they're actually violating the agreements, whether they may be there's a potential violation of the collective bargaining agreement. What's the cause for suspicion? Just if their name has technician in it or something else. So, Judge Garcia, the cause for suspicion is that there are these employees who perform work that overlaps with the union's work in the area. And so there's potential here that there is work diversion. But what's the basis for saying you thought their work overlapped? So that basis is in the telecommunications council emails where we have reports from other local unions explaining that. So unless we if we don't look at the hearing evidence, I'm not saying that we won't. Was there a basis without that evidence, without the hearing on the evidence? Yes, Your Honor, because if we look to the initial email to CenturyTel, it says requesting information about work that it's that's occurring in a jurisdiction to investigate violations or potential violations of the collective bargaining agreement. And so in the conversation about that request to say that, yes, national techs are in the area. That is that first email when it uses the word jurisdiction. Does that mean geographical jurisdiction or does it mean doing the work that's encompassed by the collective bargaining agreement? Your Honor, as I understand the email plus the text of the information request together, that means work in the that would be violating the collective bargaining agreement. Again, it's not necessary to understand what jurisdiction means here. We can take the understanding that's area. But in the context of a request for information to understand if there are potential violations of the collective bargaining agreement, that shows that that conversation is potential evidence of a possible violation. I'd like to emphasize that. Actually, I see that my time is run. So if the court has any other questions, I'd be happy to answer them. But if not, I'd like to thank the court for its time. I'd like to hear what you were about to say. Sure. Just very quickly touch on relevance. The standard here is whether there's some evidence showing a possible violation, not that there's an actual violation. So in that conversation, there was an admission of actual unit work diversion. If jurisdiction had to mean unit work and there was no admission of that. Here's what I just wanted to ask you. You heard counsel petitioner basically saying a new employer, although he's been there three years, he says, I thought it was only two. In any event, no reason to suspect. And what I wanted to understand about this case is the nature of the work being done by the employees who are represented by the union such that it's not a question of what's happening elsewhere in other jurisdictions, but there is some potential overlap. Or is it simply that the nature of the work that the employer wants accomplished includes both? So if I understand your question correctly, Judge Rogers, the work that the union technicians perform is both in the central office in Kalispell, Montana, all the way into customers' offices. So they'll work with the network. As it seems from the record, and again, part of the reason for this request is that we don't know what all these national techs are doing. It seems that the national techs are also performing work in customers' offices. And so if they're both doing that work, those national techs would be performing unit work, and that would be a violation of the collective bargaining. So both in the building where you need a key. So the building, that's referring to the central office in Kalispell. So there are definitely union technicians in that building, but it's not necessary that there are national techs in that building. But there may be. There may be, yes, certainly. I'm just trying to understand is the complexity of what's going on such that it may not always be clear who's a union employee, clear in the sense of somebody from the outside. A union employee versus a non-union employee. So it has to be monitored. I think that's certainly true, Your Honor. From the customer's perspective, if someone comes in wearing a SentryTel uniform or a Lumen uniform, it would not be clear who the union, if they're a unit employee or not. And from the union's perspective, working in the field, understanding and monitoring whether there are actually non-unit employees performing that unit work in the customer's premises is incredibly important. And so that underlies why this request is important and underlies why it's necessary to have this information to determine whether there should be a potential grievance or unfair legal practice charge. Thank you very much. Thank you, Your Honor. Mr. Scully, we'll give you one minute for rebuttal. Thank you, Your Honor. I just want to address a couple of points. The first is your question, Judge Pan, about why don't we just rely on the evidence at the trial. And the reason we don't is because we have a system, a regulatory scheme under the National Labor Relations Act where the union is the bargaining agent. The government is not the bargaining agent. The government doesn't get to augment the union's information request because it doesn't get to affect the bilateral duty to bargain in good faith. And in this case, what effectively the government tried to do is to backfill the union's articulated reason for the information, which wasn't there. I think what the record discloses is that Mr. Bland simply did what everyone else was doing and he sent this information request along. And to Judge Rogers' point, when specifically asked about those very facts, have you seen anything? Did any of your members see anything? Has anyone seen? There's no record evidence of national technicians doing anything within the jurisdiction of the union. And we'd ask, based on our briefing, that the review be granted and the orders be denied enforcement. Can I ask one very specific question? I'll try to be brief. It concerns the subpoena issue. I just want to make sure I understand the nature of the prejudice. The confusion I have is that the subpoena seems to ask for the documents to be produced at 9 a.m. the day of the hearing, and the complaint is that they were produced during the hearing. And I just wanted to – perhaps there is some prejudice to that intervening hours, but is that the nature of the prejudice or am I misunderstanding? Well, the rule that the NLRB applies is a sanction against introduction of evidence that is not produced pursuant to the subpoena, which was what I was attempting to invoke, to bar that and say that those documents are what you now purport are the articulation of relevance. Why weren't they produced in response to the subpoena? Okay. And so I was asking the judge to exclude the evidence. I see. Thank you very much. Thank you very much. The case is submitted.
judges: Pan; Garcia; Rogers